## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MAGUETTE MONDESIR,** <br><br> Plaintiff, <br><br> v. <br><br> **MARRIOTT INTERNATIONAL, INC.; and GABRIEL A. KUAN,** <br><br> Defendants. | Case No. 22–cv–01346–MCA–ESK <br><br><br> REPORT AND RECOMMENDATION |

**KIEL**, U.S.M.J.

    **THIS MATTER** is before the Court to address whether defendant Gabriel A. Kuan has been fraudulently joined to the case. Kuan and defendant Marriott International, Inc. (Marriott) filed a motion to dismiss the part of the complaint that is asserted against Kuan (Motion To Dismiss) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3.) Plaintiff Maguette Mondesir filed opposition to the Motion To Dismiss (ECF No. 14), and simultaneously filed a cross-motion (Cross-Motion) to either: (1) remand (Request To Remand) the case to the Superior Court of New Jersey, Essex County (Superior Court) for lack of complete diversity of citizenship pursuant to 28 U.S.C. § (Section) 1447(c); or (2) amend the complaint if the Court is inclined to deny the Request To Remand and to grant the Motion To Dismiss. (ECF No. 13.) Defendants filed, in one brief, opposition to the Cross-Motion and a reply on Kuan's behalf to Mondesir's opposition. (ECF No. 17.) For the following reasons, I recommend: (1) the Request To Remand be granted; (2) the Motion To Dismiss and the remainder of the Cross-Motion be administratively terminated without prejudice; and (3) the case be remanded to Superior Court.

## BACKGROUND AND PROCEDURAL HISTORY

Mondesir brought the case against both Kuan and Marriott in Superior Court. The complaint alleges: (1) Marriott employed Mondesir in several managerial positions for 20 years; (2) Mondesir was a bistro manager from approximately 2018 to November 2020, and Kuan was her general manager; (3) Mondesir sought workers' compensation benefits after tearing a wrist ligament on the job in September 2018; (4) Kuan repeatedly commented thereafter that Mondesir "is going to sue us"; (5) Mondesir ultimately had surgery and took leave from July 2019 through February 2020; (6) Mondesir sought modified work duties upon her return, but her schedule was set at seven days a week during busy times at night with no days off; (7) Kuan "micro-manag[ed]" and was "unfairly critical" of Mondesir upon her return, causing her to file a grievance with Marriott's human resources department; (8) Mondesir contracted COVID-19 in April 2020 while working, and was unable to work for several weeks; (9) while recovering from COVID-19, Mondesir was furloughed to October 2020 and then to December 2020; and (10) Mondesir's employment was terminated in November 2020 due to a "COVID-19 slow-down," even though the bistro was not closed and even though five other managerial employees at her location were retained. (ECF No. 1-1 pp. 3–6.) Mondesir alleges she was terminated due to her wrist injury and COVID-19 diagnosis, her attempts to collect workers' compensation benefits for her wrist injury, and her leaves of absence. (*Id.* p. 6.)

Of Mondesir's five-count complaint, four counts are asserted against Marriott: (1) two counts for New Jersey Law Against Discrimination (NJLAD) violations grounded on disability discrimination and retaliation; (2) one count for New Jersey Workers' Compensation Act violations; and (3) one count for New Jersey Family Leave Act violations. (*Id.* pp. 6–9). The fifth count is asserted

solely and specifically against Kuan for aiding and abetting (Aiding And Abetting) Marriott's alleged NJLAD violations. (*Id.* p. 8.)[1]

Defendants removed the case based upon diversity jurisdiction, because: (1) Mondesir is deemed a New Jersey citizen pursuant to Section 1332(a)(1); and (2) Marriott is deemed a citizen of Delaware and Maryland pursuant to Section 1332(c)(1). (*See* ECF No. 1 pp. 2–4.)[2] However, Kuan concedes that his "citizenship is the State of New Jersey." (ECF No. 1-2 p. 2). Consequently, the citizenship of each defendant is not completely diverse from Mondesir's citizenship.[3]

Defendants argue that Kuan's citizenship should be disregarded because Kuan was fraudulently joined to the case to defeat diversity jurisdiction. (ECF No. 1 p. 4.) Defendants assert that rather than allege in the original complaint that Kuan played a part in terminating her employment or failing to accommodate her, Mondesir merely alleges that Kuan: (1) "micro-manag[ed] her" and became "unfairly critical" when she returned to work after taking leave for the wrist injury; and (2) commented that Mondesir might be prone to litigation. (*Id.* p. 6.) Defendants thus argue that Mondesir alleges no colorable basis to support the Aiding And Abetting claim against Kuan. (ECF No. 3-1 pp. 6, 7.)

---

[1] In contrast to the Aiding And Abetting count, the other four counts are asserted against an unspecified, singular "defendant." (*See* ECF No. 1-1 ¶¶ 41, 42, 45, 46, 50, 51, 54, 55.) Defendants assume those four counts are aimed at Marriott alone. (ECF No. 1 p. 6.) Mondesir does not dispute this assumption. (*See generally* ECF Nos. 13, 14.)

[2] Mondesir does not argue that removal was untimely. *See* 28 U.S.C. § 1446(b)(1) (generally providing for removal within 30 days of receipt by defendant, through service or otherwise, of initial pleading).

[3] "It is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995) (citing Section 1332). "That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

Conversely, Mondesir argues her claims against Kuan are viable because an Aiding And Abetting claim against a supervisor is colorable under New Jersey law, even if the employer can be held vicariously liable. (ECF No. 13-1 pp.15, 17.)

## DISCUSSION AND ANALYSIS

### I. STANDARD FOR REVIEW

To show that Mondesir fraudulently joined Kuan solely to defeat removal based on the requirements of diversity jurisdiction, defendants as "the removing part[ies] carr[y] a heavy burden of persuasion." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (internal quotation marks and citations omitted). Kuan's joinder is fraudulent only if "there is no reasonable basis in fact or colorable ground supporting the claim against … [Kuan], or no real intention in good faith to prosecute an action against … [Kuan] or seek a joint judgment." *Id.* (internal quotation marks and citations omitted). In engaging in this analysis, I must resolve all contested factual and legal issues in Mondesir's favor, and then recommend remand of the case "if there is even a possibility that a [New Jersey] state court would find that the complaint states a cause of action against … [Kuan]." *Id.* (internal quotation marks and citations omitted).

The standard for addressing the issue of fraudulent joinder is not the same as the standards for addressing dismissal for failure to state a claim or for summary judgment. *See In re Briscoe*, 448 F.3d 201, 217–18 (3d Cir. 2006) (holding a district court must not delve into the merits of a claim in a fraudulent joinder inquiry); *Batoff*, 977 F.2d at 852 (holding a district court would be committing reversible error in a fraudulent joinder analysis by delving into the merits of the claim asserted against the defendant in issue). An inquiry under a motion to dismiss or for summary judgment "is more searching than that permissible when a party makes a claim of fraudulent joinder." *Batoff*, 977 F.2d at 852. A fraudulent joinder analysis is not as "penetrating," and thus the

rejection of a fraudulent joinder argument does not guarantee that a claim will withstand a motion to dismiss for failure to state a claim on the merits, a motion for summary judgment, or a trial. *Id.* at 853. Even when "the allegations against [a defendant] are sparse, the Court's … fraudulent joinder jurisprudence … directs an approach significantly more forgiving than that governing motions to dismiss." *Raber v. Express Scripts Holding Co.*, No. 18-08639, 2019 WL 1043101, at *1 (D.N.J. Mar. 5, 2019) (internal quotation marks omitted); *see Casanova v. FedEx Ground Package Sys., Inc.*, No. 20-00415, 2020 WL 5107549, at *3 (D.N.J. Aug. 31, 2020) (remanding NJLAD case naming nondiverse defendant supervisors, although plaintiff "may have failed to state a cognizable claim against any defendant under the federal pleading standards," as "the substantive merits of her claims are not at issue in the pending motion" (internal quotations marks, alterations, and citation omitted)).

## II. MONDESIR HAS ASSERTED COLORABLE CLAIMS AGAINST KUAN

There is more than a mere possibility that a New Jersey state court could find Mondesir has asserted viable claims in the original complaint against Kuan under New Jersey state law. It is undisputed that Kuan was Mondesir's manager when Mondesir experienced the allegedly discriminatory conduct and when her employment was terminated. As a result, it was reasonable and expected that Mondesir would join Kuan as a defendant to the original complaint, even if the claims asserted against Kuan are not ultimately successful and Marriott is ultimately found completely liable. To pass the fraudulent joinder analysis, Mondesir was required only to allege that Kuan was her "supervisor and either participated or had knowledge of the alleged NJLAD violations." *See Vastola v. Sterling*, No. 21-14089, 2022 WL 2714009, at *4 (D.N.J. July 13, 2022) (remanding NJLAD case that named a nondiverse supervisor as a defendant, as even the sparse allegations presented met the liberal standard for fraudulent joinder analysis). Mondesir has done so.

5

Further, it appears defendants' argument that Mondesir has named Kuan in the case in bad faith is belied by the fact that she named Kuan in Superior Court originally, as opposed to belatedly seeking to add Kuan after the case had been removed.  (ECF No. 1-1.)  In addition, defendants admit in the notice of removal that Mondesir served Kuan with process before the case was removed (ECF No. 1 p. 2), thereby demonstrating that Mondesir did not merely name Kuan without taking any further steps to proceed against him.  Mondesir's efforts reveal a good faith intention to proactively proceed against Kuan, and that her intention to do so cannot be viewed as being half-hearted.  *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (holding claims in an action asserted against "Doe defendants" survived fraudulent joinder analysis, as plaintiffs endeavored to proceed against those defendants and to conduct discovery); *Bae v. Va. Transp. Corp.*, No. 20-02354, 2020 WL 6268675, at *2 (D.N.J. Oct. 26, 2020) (holding claims asserted against employee defendant in a personal injury action survived fraudulent joinder analysis, because "by personally serving [employee defendant] with process …, plaintiffs have demonstrated a good-faith intention to proceed against him").

### III. THE SUBSTANTIVE MERITS ARE IRRELEVANT

In engaging in this fraudulent joinder analysis, I will not delve into the parties' arguments concerning the substantive merits of the claims and defenses of the case.  For instance, defendants argue that the claims against Kuan must fail because they are "conclusory," and that the allegations concerning Kuan's comments about Mondesir's potentially litigious nature and his unfairly critical micro-managing of her work are without basis.  (ECF No. 3-1 pp. 13, 18, 19; ECF No. 17 pp. 12, 19.)  However, the allegations concerning Kuan's conduct in the original complaint as general manager and supervisor are sufficient to demonstrate a basis for the Aiding And Abetting claim.  (ECF No. 13 p. 8; ECF No. 14 pp. 10, 11.)  Mondesir also points out that "[d]iscovery may ultimately

6

bear out that [Kuan] played a pivotal role in the decision to make [Mondesir] one of the only individuals terminated in an alleged downsizing because of discriminatory motivation." (ECF No. 14 p.23.) These arguments present disputes concerning the underlying facts and merits of the case that are beyond the scope of my inquiry concerning fraudulent joinder and diversity jurisdiction. *Batoff,* 977 F.2d at 852.

Furthermore, since the original complaint on its face alleges that Kuan in his capacity as Mondesir's supervisor aided and abetted Marriott's overall discriminatory conduct (ECF No. 1-1 p.9), I find Mondesir's allegations to be sufficient at this juncture to survive the fraudulent joinder analysis. Such a finding based on those types of allegations is neither unusual nor unique. *See McBurnie v. CRC Ins. Servs., Inc.*, No. 19-20018, 2020 WL 1329917, at *5 (D.N.J. Mar. 23, 2020) (remanding NJLAD case naming nondiverse individual defendants, as plaintiff alleged they had supervisory and managerial authority over him during relevant times); *Raber*, 2019 WL 1043101, at *1 (remanding NJLAD case naming nondiverse individual defendant, even though allegations against individual defendant were admittedly sparse); *Regis v. Int'l Paper Co.*, No. 12-07549, 2013 WL 5410700, at *3, *4 (D.N.J. Sept. 26, 2013) (remanding NJLAD case, even though plaintiff neglected to use the exact phrase "aid and abet" in the complaint, as the allegation that the nondiverse individual defendant "was [the] supervisor and that he used his position to discriminate under the NJLAD" sufficed); *Berckman v. United Parcel Serv.*, No. 07-05245, 2007 WL 4080372, at *2 (D.N.J. Nov. 14, 2007) (remanding NJLAD case, as "[t]he Complaint, on its face, is sufficient to retain [the individual defendant] as a party because it clearly alleges aider-and-abettor liability under the NJLAD against him as an individual").

Defendants rely on *Mahmoud v. Canon Solutions America, Inc.*, No. 21-11935, 2021 WL 6197422 (D.N.J. Dec. 22, 2021), which they assert is "a case factually similar to this case" in terms of the fraudulent joinder issues presented.

(ECF No. 3-1 pp. 16, 17; ECF No. 17 pp. 18, 19.)   In that NJLAD case, which had been removed pursuant to diversity jurisdiction, the plaintiff asserted claims against nondiverse individual employees for aiding and abetting the employer's NJLAD violations.  *Id.* at *2.   The District Court, in ultimately granting a motion to dismiss the aiding-and-abetting claims asserted against the individual employees and denying a cross-motion to remand, found that the plaintiff had fraudulently joined them to defeat diversity jurisdiction.  *Id.* at *4.   But it is readily apparent upon a deeper reading of the facts in *Mahmoud* that defendants' reliance is misplaced.   The complaint in *Mahmoud* lacked "critical allegations" in that it did not "allege that [the individual defendants] supervised [the] [p]laintiff," and did not "allege that [the individual defendants] oversaw [the] [p]laintiff's daily activities or that [they] … had any authority whatsoever over the performance of his job duties."  *Id.* (internal quotation marks and citation omitted).   This situation stands in stark contrast to the allegations against Kuan, wherein Mondesir alleges Kuan: (1) supervised her; (2) oversaw her work activities to the point of micro-managing her and unfairly criticizing her performance; and (3) engaged in conduct that was the basis for a grievance that she filed with Marriott's human resources department.   (ECF No. 1-1 pp. 4–6.)

Defendants' reliance on *Sussman v. Capital One, N.A.*, No. 14-01945, 2014 WL 5437079 (D.N.J. Oct. 24, 2014), *reconsideration denied*, 2015 WL 164095 (D.N.J. Jan. 13, 2015), is similarly misplaced.   (ECF No. 3-1 p. 17; ECF No. 17 pp. 17, 18.)   In that NJLAD case, which had also been removed pursuant to diversity jurisdiction, the District Court held that because four individual employees of the defendant employer had been fraudulently joined in an effort to defeat diversity, the case would remain in federal court.   2014 WL 5437079, at *7.   But that holding is distinguishable from the this case for several reasons. First, the *Sussman* plaintiff attempted to add the nondiverse individual defendants *after* the case had been removed to federal court, which led the District Court to conclude that "the circumstances strongly hint that

jurisdictional concerns at least partly motivated the amendment," particularly in view of "the timing of [the] [p]laintiff's amendment, which occurred a mere four days after removal." *Id.* at *4. In contrast, Mondesir named Kuan in state court in the *original* complaint and *before* the case was removed, and served Kuan while the case was pending in Superior Court, thereby demonstrating that Mondesir is proceeding in good faith even if her claims against Kuan are not successful. Second, the District Court in *Sussman* found that three of the individual employees "were not [the plaintiff's] supervisors," and that as to the fourth individual employee, the plaintiff "makes no … connection … between [that individual employee's] actions and his complained-of NJLAD violation." *Id.* at *6. Here, Mondesir clearly alleges that Kuan was her supervisor, and that he "micro-manag[ed] her" and became "unfairly critical" upon her return from leave for her wrist surgery to the point of hostility. (ECF No. 1-1 pp. 4–6.)[4]

At this juncture, I am not permitted to pass "on the merits of the case." *Agyabeng v. KMart Corp.*, No. 09-00730, 2009 WL 2151904, at *3 (D.N.J. July 14, 2009) (rejecting fraudulent joinder argument in NJLAD case that named employee managers as defendants along with the employer). Based upon my review of the original complaint, the Request To Remand, and the related submissions, I find that a New Jersey state court could conclude that Mondesir states a viable Aiding And Abetting cause of action against Kuan. Accordingly, I must find that the joinder of Kuan is proper and recommend that the case be remanded to Superior Court for lack of diversity jurisdiction. In recommending that the Request to Remand be granted, I am not addressing the merits of the Motion To Dismiss (ECF No. 3), the remainder of the Cross-Motion (ECF No. 13),

---

[4] The third case relied upon by defendants — *Little v. Doe*, No. 09-05183, 2010 WL 3812364 (D.N.J. Sept. 28, 2010) — requires little discussion. (*See* ECF No. 3-1 p. 17 (defendants state that *Little* "f[ound] fraudulent joinder in part because the joined defendant was not a 'supervisor' to subject her to liability under the NJLAD").) As defendants admit, Kuan was Mondesir's "General Manager." (*Id.* p. 6.)

9

or Mondesir's proposed amended complaint submitted as an exhibit to the Cross-Motion (ECF No. 13-2 pp. 27–37.)[5]

## RECOMMENDATION AND ORDER

I issue this report and recommendation upon my review of the papers and without oral argument. *See* Fed.R.Civ.P. 78(b); *see also* L.Civ.R. 78.1(b). For the reasons stated above, it is:

1. **RECOMMENDED** that the portion of the Cross-Motion concerning the Request To Remand (ECF No. 13) be granted.

2. **RECOMMENDED** that the Motion To Dismiss (ECF No. 3) and the remainder of the Cross-Motion (ECF No. 13) be administratively terminated without prejudice.

3. **RECOMMENDED** that the case be remanded to the Superior Court of New Jersey, Essex County.

4. **ORDERED** that the Clerk of the Court administratively terminate the Motion To Dismiss (ECF No. 3) and the Cross-Motion (ECF No. 13), pending the review of this report and recommendation.

5. **ORDERED** that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.

---

[5] The Motion to Dismiss (ECF No. 3) was filed earlier than the Cross-Motion (ECF No. 13). Nevertheless, I am authorized to address the portion of the Cross-Motion presenting the Request To Remand first. *See Casanova*, 2020 WL 5107549, at *1 (granting plaintiff's motion to remand before addressing defendants' earlier-filed motion to dismiss in NJLAD case that included aiding-and-abetting claim and that was purportedly removed under diversity jurisdiction).

6.    **ORDERED** that the parties have **14 days** to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

                                                  */s/ Edward S. Kiel*
                                                  **EDWARD S. KIEL**
                                                  **UNITED STATES MAGISTRATE JUDGE**

Date:    October 26, 2022